UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW J. SWANSON, <br> Plaintiff, <br> v. <br> CAROLYN W. COLVIN, <br> Commissioner of Social Security, <br> Defendant. | NO. EDCV 12-2108 AGR <br><br> MEMORANDUM OPINION AND ORDER |

Matthew J. Swanson filed this action on November 29, 2012. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on January 4 and 10, 2013. (Dkt. Nos. 6-7.) On June 28, 2013, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

**I.**

## PROCEDURAL BACKGROUND

On April 30, 2009, Swanson filed applications for disability insurance benefits and supplemental security income benefits. In both applications, Swanson alleged an onset date of November 28, 2008. Administrative Record ("AR") 24, 158. The applications were denied initially and upon reconsideration. AR 24, 80-83. Swanson requested a hearing. On July 1, 2011, an Administrative Law Judge ("ALJ") conducted a hearing at which Swanson, a medical expert and a vocational expert ("VE") testified. AR 43-79. On August 19, 2011, the ALJ issued a decision denying benefits. AR 21-38. On October 5, 2012, the Appeals Council denied the request for review. AR 1-5. This action followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.

## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

The ALJ found that Swanson met the insured status requirements through December 31, 2009. AR 26. He had the severe impairments of degenerative disc disease of the lumbosacral spine, chronic liver disease and asthma. AR 26.

Swanson had the residual functional capacity ("RFC") to perform light work.[1] He "can lift and/ or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for four to five hours out of an eight-hour workday with regular breaks; he can sit for three to four hours out of an eight-hour workday with regular breaks; he must have opportunity to change position 1-3 minutes every hour; [he] is unlimited with respect to pushing and/or pulling, he can occasionally stoop and bend; he can climb stairs, but he cannot climb ladders, work at heights, or balance; [his] work environment should be controlled, with no excessive inhaled pollutants (such as an office or a hearing room), the claimant may miss work twice a month." AR 27. Although Swanson could not perform past relevant work, there were jobs in significant numbers in the national

---

[1] Light work involves lifting and/or carrying no more than 20 pounds occasionally and 10 pounds frequently; sitting, standing and/or walking for six hours out of an eight-hour workday with regular breaks; pushing or pulling within those weight limits; occasionally climbing ramps, stairs, ladders, ropes, and/or scaffolds; occasionally stooping, kneeling, crouching, and/or crawling; and performing simple repetitive tasks. 20 C.F.R. §§ 404.1567(b), 416.967(b).

3

economy that he could perform, such as assembler, small products; cashier II; information clerk; and counter clerk. AR 35-37.

### C. Treating and Examining Physicians

An opinion of a treating physician is given more weight than the opinion of a non-treating physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When, as here, a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn,* 495 F.3d at 632 (citations and quotation marks omitted). When the ALJ declines to give a treating physician's opinion controlling weight, the ALJ considers several factors, including the following: (1) the length of the treatment relationship and frequency of examination;[2] (2) the nature and extent of the treatment relationship;[3] (3) the amount of relevant evidence supporting the opinion and the quality of the explanation provided; (4) the consistency with the record as a whole; and (5) the specialty of the physician providing the opinion. *See Orn*, 495 F.3d at 631; 20 C.F.R. § 404.1527(d)(1)-(6).

An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings. *Orn*, 495 F.3d at 632.

---

[2] "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. § 404.1527(d)(2)(I).

[3] "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(d)(2)(ii).

4

"'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.'" *Ryan v. Comm'r*, 528 F.3d 1194, 1202 (9th Cir. 2008) (citation omitted) (emphasis omitted).  However, a non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

      **1.**    **Dr. Thomas and Dr. Steinberg**

On January 10, 2011, Dr. Thomas completed a Multiple Impairment Questionnaire.  AR 336-43.  Dr. Thomas saw Swanson once every 1-2 months, and diagnosed chronic low back pain with recent exacerbation due to progression of osteoarthritis and degenerative disc disease.  AR 336.  Dr. Thomas cited reduced range of motion of the low back and paravertebral spasm.  AR 336-37.

Dr. Thomas noted that Swanson's pain significantly worsened in December 2009.  AR 342.  Swanson could sit three hours and stand/walk five hours in an eight-hour workday on a sustained basis.  AR 338.  Swanson would move around once or twice per hour for five to ten minutes.  AR 338-39.  Swanson could carry five pounds frequently and up to twenty pounds occasionally, and should avoid repetitive reaching, handling, fingering or lifting.  AR 339.  He had moderate limitations in grasping, turning and twisting objects; minimal limitations in reaching; and no limitations in fine manipulations.  AR 339-40.  Swanson was not limited in keeping his neck in a constant position.  AR 340.  Swanson's pain "periodically" was severe enough to interfere with attention and concentration.[4]  Swanson was capable of tolerating a low stress work environment.  AR 341.  Dr. Thomas anticipated that Swanson would take unscheduled breaks once every two to three hours for about twenty minutes, and would be absent more than

---

[4] The options were never, seldom, periodically, frequently and constantly. AR 341.

5

three times per month. AR 341-42. Dr. Thomas precluded Swanson from pulling, kneeling, bending and stooping. AR 342.

On June 16, 2011, Dr. Thomas essentially reiterated the same limitations except that he did not repeat that Swanson would have to move around once or twice per hour for five to ten minutes. AR 385.

On June 21, 2011, Dr. Steinberg examined Swanson and submitted a report to his counsel. AR 387-99. Dr. Steinberg reviewed Dr. Thomas' questionnaire. AR 389. Dr. Steinberg stated that the earliest the limitations would apply is 2009. AR 398.

Swanson complained of low back pain and upper extremity pain when reaching above his head. AR 390. Swanson denied shortness of breath. AR 390, 392.

Dr. Steinberg noted positive clinical findings of lumbosacral spasms and decreased range of motion of the lumbosacral spine.[5] AR 396. Shoulder range of motion was full with no pain or tenderness. AR 393. Grip strength was normal. AR 394-95. Range of motion in the lower extremities was intact with no pain or tenderness. AR 394.

Dr. Steinberg noted that Swanson described his pain and fatigue as 8 on a scale of 1-10. Swanson stated that he had constant aching and at times sharp pain with exertion. His pain occurs daily and is aggravated by movement, positioning and reaching above his head. AR 396.

Dr. Steinberg opined that Swanson could sit three hours, and stand/walk for about two hours. Swanson would be required to get up from sitting and move around for 30 minutes about every two hours. AR 396. Swanson could lift /carry

---

[5] Dr. Steinberg noted some loss of lordosis of the thoraco-lumbar spine, tenderness on palpation and range-of-motion testing, reduced range of motion, and para-lumbar muscle spasms. Dr. Steinberg noted tenderness to palpation along the spinous processes and paraspinal musculature from the thoracic spine to the lumbosacral junction, and para-vertebral muscle spasm. AR 393. Strength was 5/5 in all extremities. AR 395.

up to five pounds frequently and up to ten pounds occasionally. Dr. Steinberg assessed significant limitations in repetitive reaching, handling, fingering and lifting; moderate limitations in grasping, turning or twisting objects; no limitations in fine manipulation; and marked limitations in reaching (including overhead reaching). Swanson should not keep his neck in a constant position, and his pain/fatigue would be severe enough to interfere with his attention and concentration on a frequent basis. AR 397. Swanson would be capable of tolerating a low stress work environment. He would take unscheduled breaks for about thirty minutes every two hours, and be absent more than three times per month. He would be precluded from pushing, pulling, kneeling, bending or stooping. AR 398.

### 2. Analysis

Swanson argues that the ALJ did not credit these physicians' opinions, particularly the statements that he would likely be absent more than three times per month, and could tolerate only a low stress work environment. JS at 10.

With respect to mental impairment issues, the ALJ gave greatest weight to examining psychiatrist Dr. Bedrin. AR 31. Dr. Bedrin specifically found that Swanson was not impaired in his ability to concentrate or pay attention, or in his ability to withstand workplace stress in day-to-day work activities in eight-hour workdays. AR 32, 271. Swanson's mental status examination indicated that his recent remote memory was intact, his intellect was average and his immediate recall was only mildly impaired. AR 270. An examining physician's opinion based on independent clinical findings constitutes substantial evidence. *Orn*, 495 F.3d at 632.

With respect to physical impairment issues, the ALJ discounted to some extent the opinions of both Dr. Thomas and Dr. Steinberg "because the doctors apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Swanson], and seemed to uncritically to accept as true

7

most, if not all, of what [Swanson] reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints."[6] AR 34. The ALJ noted that Dr. Thomas' opinion departed substantially from the objective medical evidence and his conservative course of treatment for Swanson.[7] AR 35.

The ALJ's analysis is supported by substantial evidence. In November 2009, tests indicated mild pulmonary overexpansion. AR 30, 331. In February 2010, a pulmonary function study indicated that Swanson had "minimal hypoxemia".[8] AR 30, 300. The DLCO (carbon monoxide diffusing capacity) was "mildly reduced," indicating ventilation/perfusion abnormalities and/or a reduction in the pulmonary capillary and alveolar surface areas. AR 30, 300. A pulmonary function test in August 2010 showed slight improvement. AR 308. In May 2010, the CT scan of the chest showed no acute disease and no evidence of interstitial pulmonary fibrosis. AR 31, 293.

In October and December 2010, tests of the lumbar spine revealed mild degenerative changes and mild bilateral neural foraminal stenosis at L4-L5 and L5-S1. AR 31, 305, 379. In February 2011, Swanson was diagnosed with mild lumbar degenerative disk disease, mild lumbar spinal stenosis, deconditioning and chronic low back pain. AR 31, 377. Swanson had muscle spasm in the paraspinal muscles, right greater than left, from the midthoracic to lumbosacral junction. Muscle strength was 5/5 in all extremities. Gait was steady and even.

---

[6] Swanson does not challenge the ALJ's findings on his credibility. The ALJ's findings are fully supported by substantial evidence.

[7] The ALJ referred to the course of treatment prescribed by Dr. Steinberg. AR 35. The court assumes that this is a typographical error and that the ALJ actually referred to the treating physician, Dr. Thomas. There is no indication Dr. Steinberg treated Swanson. Dr. Steinberg stated that he saw Swanson in June 2011 for a Qualified Medical Evaluation. AR 387. He prescribed no treatment.

[8] Lung capacity was normal and reduction in the PaO2 was minimal. AR 300.

AR 376-77.  As of March 2011, after Swanson was apparently in a car accident, a CT of Swanson's cervical spine revealed normal alignment, unremarkable prevertebral soft tissue, a small disk margin osteophyte at the C5-C6 level and mild mucosal thickening in bilateral maxillary sinus, left greater than right.  AR 31, 371.  The chest examination showed slightly expanded lungs.  AR 31, 374.  The CT scan of the abdomen and pelvis was normal.  AR 31, 375.

Dr. Thomas acknowledged the mild results in the pulmonary function tests, MRIs and x-rays.  AR 292, 297, 302, 357.  In November 2010, Swanson complained of lower back pain for the past three months.  Dr. Thomas noted that the spine had normal symmetry, gait was normal and range of motion was full or within normal limits.  AR 355, 358-59, 361.  Swanson was treated conservatively with medication.  The progress notes reflect Swanson's complaints of pain or shortness of breath.  *E.g.*, AR 295 (pain when sitting a long time), 307 (shortness of breath when walking uphill or climbing ladders), 355 (lower back pain for past three months), 376 (low back pain described as "constant throb").  The treatment notes do not reflect the degree of limitations expressed in Dr. Thomas' questionnaire responses.  AR 307 (pt able to perform activities of daily living without difficulty), 335 (shooting pain in right leg did not interfere with day to day life), 349-64.

Swanson argues that the ALJ improperly speculated that Dr. Thomas acted as an advocate.  The ALJ noted that such a motive is "more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case."  AR 35.  Because the ALJ could reasonably discount a treating physician's opinion that was inconsistent with the objective clinical findings in the treatment record, whether or not the treating physician acted out of sympathy for his patient is immaterial.

Dr. Steinberg expressly relied upon Swanson's reported symptoms, including his degree of pain.  For example, whereas Dr. Steinberg found on

9

examination full range of motion in the shoulders without pain or tenderness, Dr. Steinberg accepted Swanson's stated pain of 8/10 when reaching overhead in formulating Swanson's limitations. AR 396-97. Whereas Dr. Steinberg's examination of Swanson's neck was normal, Dr. Steinberg accepted that Swanson could not keep his neck in a constant position.

Swanson argues that the ALJ improperly discounted Dr. Steinberg's opinion because it was solicited by counsel. "[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998). Here, the ALJ acknowledged that Dr. Steinberg's opinion "is certainly legitimate and deserves due consideration." AR 34. However, the ALJ discounted Dr. Steinberg's opinion because it relied upon Swanson's subjective complaints and was inconsistent with the objective clinical findings. *See Saelee v. Chater*, 94 F.3d 520, 522-23 (9th Cir. 1996) (per curiam) (ALJ may discount solicited opinion inconsistent with physician's notes and unsupported by objective medical evidence); *Burkhart v. Bowen*, 856 F.2d 1335, 1339-40 (9th Cir. 1988) (ALJ may reject solicited opinion unsupported by medical findings, observations or test results).

In addition, the ALJ accorded weight to the medical expert because he is an orthopedic specialist, reviewed the medical records, observed Swanson at the hearing and expressed opinions consistent with the objective medical evidence. AR 33, 49, 51-53. The opinion of a nonexamining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Dr. Landau noted that Swanson's MRIs showed mild degenerative changes that were normal in a man of his age. AR 54. Dr. Landau opined that Swanson could stand/walk for two hours in an eight-hour workday; sit with normal breaks every two hours; lift/carry up to ten pounds frequently and twenty pounds

occasionally; stoop and bend occasionally; climb stairs but cannot climb ladders or ropes, or balance; and work in an environment that was free of excessive inhaled pollutants (such as an office). AR 50-51. Dr. Landau did not anticipate that Swanson would miss work due to his conditions. AR 51. When asked to explain why his opinion was less restrictive than the treating physician, Dr. Thomas, Dr. Landau stated that he did not find objective evidence of severe disease. AR 54-55.

The ALJ did not err.

### D. Vocational Expert

An ALJ may rely on a VE's testimony given in response to a hypothetical question that contains all of the limitations the ALJ found credible and supported by substantial evidence. *Bayliss*, 427 F.3d at 1217-18. An ALJ is not required to include limitations that are not in his findings. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

The VE testified that a person with Swanson's RFC could perform the representative jobs of assembler, small products; cashier II; information clerk; and counter clerk. AR 73. The claimant would be able to miss work up to two times per month, but not more than that.[9] AR 73-74. The ALJ was entitled to rely on the VE's testimony. "A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." *Bayliss*, 427 F.3d at 1218.

Swanson argues that the VE's testimony was inherently unreliable based on information that is not in the administrative record. Swanson cites a 2009 study indicating that the average number of paid sick days per year in private industry is eight or nine days. JS at 19. Swanson's information is not supported by analysis or explanation by a VE. Even assuming the court could consider this

---

[9] Contrary to Swanson's argument, no one asked for the basis of the VE's testimony on this point.

11

information,[10] it is incomplete and would not by itself undermine the VE's testimony.  For example, Swanson does not provide information about the average number of paid vacation days per year in private industry.  Without that information, Swanson cannot undermine the VE's testimony about an employee's ability to miss work for an average of twice per month.  Swanson has not shown any conflict between the VE's testimony and the Dictionary of Occupational Titles.  The ALJ did not err.

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

*Alicia G. Rosenberg*

DATED:  August 20, 2013

ALICIA G. ROSENBERG
United States Magistrate Judge

---

[10] On judicial review of the Commissioner's final decision, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  A court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*  Swanson does not attempt to make the required showing.

12